IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MAIN ST PROPERTIES LLC, and PATRICK SHANNON,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF BELLEVUE, NEBRASKA, BREE ROBBINS, DARRYL KUHLMAN, JANE AND JOHN DOES, and SUSAN KLUTHE,<br><br>Defendants. | **8:20CV278**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on a motion to dismiss filed by defendants City of Bellevue, Nebraska ("the City"), Alicia Robbins,[1] Darryl Kuhlman, and Susan Kluthe (hereinafter, "the Bellevue defendants"), Filing No. 27. Plaintiffs Main Street Properties and Patrick Shannon (collectively, "MSP") assert claims for deprivation of civil rights under 42 U.S.C. § 1983; civil rights conspiracy under 42 U.S.C. § 1985; and equitable estoppel, impairment of contract and unlawful taking under state law. This Court has jurisdiction under 28 U.S.C. § 1331 and 1343.

The Bellevue defendants move to dismiss all of the MSP's claims for failure to state a claim upon which relief can be granted under Federal Rules of Civil Procedure 12(b)(6). Further, they contend that this Court lacks jurisdiction over MSP's Takings Clause and Due Process claims because MSP has not exhausted state law remedies. *See* Fed. R. Civ. P. 12(b)(1).

---

[1] The Bellevue defendants state that defendant Ashley Robbins is incorrectly identified as "Bree Robbins" in the Second Amended Complaint. Filing No. 28, Bellevue defendants brief at 1.

1

I.   BACKGROUND

This dispute involves the Bellevue defendants' conduct with respect to two parcels of property owned by MSP. MSP operates a U-Haul business at 2221 Main Street Bellevue, Nebraska ("2221 Main"), and uses property located at 1503 Galvin Road, Bellevue, Nebraska ("1503 Galvin") for storage. MSP alleges that the defendants illegally rezoned the 2221 Main property; levied an illegal special assessment against the property at 1503 Galvin; and eventually demolished a building on that property. MSP alleges the City of Bellevue unlawfully deprived it of property rights it acquired under a 2012 Zoning Development Agreement ("the Agreement") with the City.

The Agreement was the result of a request for rezoning of MSP's property to allow it to continue to operate its U-Haul business and to rent office space at 2221 Main. MSP alleges that prior to execution of the Agreement in 2012, MSP had been utilizing three parking spots north of the building to park U-Haul vans, trucks, and trailers. It alleges it agreed to forego use of those spots in exchange for the zoning variance. Further, it states it made improvement on the property in reliance on the agreement.

MSP alleges that in 2020, the defendants conspired to harm and harass MSP in retaliation for Patrick Shannon's speaking out about improper activities and expenditures by City officials. It alleges the City suddenly and arbitrarily contended that MSP could not park U-Haul-related vehicles in three different parking spots, in retaliation for defendant Shannon's exercise of First Amendment rights.[2] MSP contends the City unilaterally

---

[2] Main Street does not allege a free-standing claim for First Amendment retaliation but relies on a violation of First Amendment rights as motivation for differential treatment to support its equal protection claim. A plaintiff claiming retaliation in response to the exercise of First Amendment rights must plausibly allege "(1) that it engaged in a protected activity, (2) that the defendants responded with adverse action that would 'chill a person of ordinary firmness' from continuing in the activity, and (3) that 'the adverse action was motivated at least in part by the exercise of the protected activity.'" *L.L. Nelson Enters., Inc. v. City of St. Louis*, 673 F.3d 799, 807–08 (8th Cir. 2012) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)

changed the interpretation of the agreement; cited MSP for nonexistent ordinance violations; stated MSP had waived their rights to defend against the City's actions; refused to allow defendant Shannon to address the Bellevue Planning Commission; refused to allow an appeal of the City's assessment, levy and lien on the Galvin Road property, and performed unworkmanlike and incomplete demolition at that site. It alleges that the City's actions were motivated by personal animus against defendant Shannon and that no other landowners were denied opportunities to challenge or appeal adverse zoning or land-use dispositions. It contends the City's actions violated ordinances and its own rules of procedure. Also, it alleges defendants Robbins and Kluthe interfered with, hindered, deterred, and obstructed MSP's attempts to exercise its right to appeal by refusing to accept its Notice of Appeal and $200.00 cash bond and failing to prepare and provide a transcript.

As noted, the defendants challenge the Court's jurisdiction over MSP's Takings Clause and procedural due process claims because MSP has not exhausted remedies under Nebraska law. They challenge MSP's substantive due process claim on the basis that MSP has not alleged a legitimate property interest and has not alleged facts showing the city's actions are irrational. They also argue that MSP fails to allege a conspiracy with sufficient specificity, and further contend the City of Bellevue cannot conspire with itself or with its employees. Also, they argue the City cannot be subjected to liability under 42 U.S.C. § 1983 because MSP has not alleged a City "policy or custom" that caused a violation of MSP's rights.

The defendants further contend the MSP's allegations with respect to its state law claims are insufficient under Federal Rule of Civil Procedure 12(b)(6) and that MSP's

contract claim is barred by a covenant not to sue in the Agreement at issue. They also contend plaintiff Shannon is not a real party interest and is subject to dismissal under Federal Rule of Civil Procedure 17.

II. LAW

A. Standards of Review

Jurisdiction is a threshold issue for this Court. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-96 (1998); *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 507 (2006). The party seeking to invoke federal jurisdiction carries the burden of proof on that issue. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006). A complaint can be challenged under Fed. R. Civ. P. 12(b)(1) either "on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Id.* In a factual attack on the jurisdictional allegations of the complaint, however, the court can consider competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute. *Id.*

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the factual allegations in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must be dismissed if it does not plead "enough facts to state a claim for relief that is plausible on its face." *Id.* at 570. "A claim has facial

4

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that the plausibility standard does not require a probability but asks for more than a sheer possibility that a defendant has acted unlawfully). The Court must find "enough factual matter (taken as true) to suggest" that "discovery will reveal evidence" of the elements of the claim. *Twombly*, 550 U.S. at 558, 556. The evaluation prompted by a 12(b)(6) motion requires the court to construe the complaint in the light most favorable to the plaintiff and to accept as true the factual allegations of the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *see also Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018).

The Court ordinarily does not consider matters outside the pleadings on a motion to dismiss. *See* Fed. R. Civ. P. 12(d). Matters outside the pleadings include "any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings." *Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 948 (8th Cir. 1999). The Court may, however, "consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (quoting *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010)).

B. Takings Clause

The Takings Clause of the Fifth Amendment states that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend V. The Takings clause "'is designed not to limit the governmental interference with property rights *per se,*

5

but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking.'" *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005) (quoting *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles,* 482 U.S. 304, 315 (1987) (emphasis in original). To sustain a Takings Clause claim, a plaintiff must first demonstrate it has a property interest that the Takings Clause protects. *Hawkeye Commodity Promotions, Inc. v. Vilsack*, 486 F.3d 430, 439 (8th Cir. 2007). The next question is whether the plaintiff has suffered a taking. *Id.* A taking may be a physical taking—where the government directly appropriates private property or forces a physical invasion of it—or a regulatory taking—"where a regulation affecting private property 'goes too far.'" *Id.* (citation omitted).

A categorical regulatory taking occurs when the government regulation "denies all economically beneficial or productive use of land." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992); *see also Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 332 (2002). A claim that involves less than a categorical taking "requires careful examination and weighing of all the relevant circumstances.' " *Tahoe-Sierra Pres. Council, Inc.*, 535 U.S. at 335. This ad-hoc factual inquiry is guided by three factors: (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action. *Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 224–25 (1986).

A state law inverse condemnation action is a type of regulatory taking claim. *See Knick v. Twp. of Scott*, — U.S. ——, ——, 139 S. Ct. 2162, 2167–68? (2019). Every state

6

other than Ohio provides a state inverse condemnation action. *Id.*; *see, e.g.*, Neb. Rev. Stat. § 76-705.

A property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it. *Knick v. Twp. of Scott*, — U.S. ——, ——, 139 S. Ct. 2162, 2167–68 (2019) (overruling *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985), which effectively established an exhaustion requirement for § 1983 takings claims).[3] "That does not mean that the government must provide compensation in advance of a taking or risk having its action invalidated: So long as the property owner has some way to obtain compensation after the fact, governments need not fear that courts will enjoin their activities[,]" it means, however, "that the property owner has suffered a violation of his Fifth Amendment rights when the government takes his property without just compensation, and therefore may bring his claim in federal court under § 1983 at that time." *Id.* The Fifth Amendment right to full compensation arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner. *Id.* at 2170.

C.   Due Process Clause

To state a claim for a violation of procedural due process, a plaintiff must allege that defendants deprived the plaintiff of a protectible liberty or property interest without providing adequate procedural safeguards. *Mathews v. Eldridge*, 424 U.S. 319, 332-33 (1976). "Because the Constitution protects rather than creates property interests, the

---

[3] Prior to *Knick*, the Eighth Circuit recognized *Williamson's* exhaustion requirement as a jurisdictional prerequisite. *Snaza v. City of St. Paul*, 548 F.3d 1178, 1182 (8th Cir. 2008) (affirming district court's dismissal of a takings claim for lack of subject matter jurisdiction); *Knutson v. City of Fargo*, 600 F.3d 992, 997 (8th Cir. 2010) (holding that Takings Clause claims brought in federal court had a state exhaustion requirement).

7

existence of a property interest is determined by reference to 'existing rules or understandings that stem from an independent source such as state law.'" *Phillips v. Washington Legal Found.*, 524 U.S. 156, 164 (1998) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).  A protected property interest is " 'a legitimate claim to entitlement' . . . as opposed to a mere subjective expectancy." *Id.* "[T]he holder of a land use permit has a property interest if a state law or regulation limits the issuing authority's discretion to restrict or revoke the permit by requiring that the permit issue upon compliance with terms and conditions prescribed by statute or ordinance. *Bituminous Materials, Inc. v. Rice Cty.*, 126 F.3d 1068, 1070 (8th Cir. 1997)).

        1.      Procedural Due Process

The state may not deprive a person of property without notice and the opportunity to be heard.  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).  The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  The question of whether the defendants' procedural safeguards were adequate to satisfy procedural due process is a question of law for the Court to determine, but the question of whether the defendants indeed provided these procedures may be a question of fact. *Stauch v. City of Columbia Heights*, 212 F.3d 425, 431 (8th Cir. 2000). The Eighth Circuit has held, "where a property owner is given written notice to abate a hazard on his or her property and has been given an opportunity to appear before the proper municipal body considering condemnation of the property, no due process violation occurs when the municipality abates the nuisance

8

pursuant to the condemnation notice." *Samuels v. Meriwether*, 94 F.3d 1163, 1166-67 (8th Cir. 1996).

### 2. Substantive Due Process

"The Due Process Clause bars 'certain government actions regardless of the fairness of the procedures used to implement them . . .'" *Lemke v. Cass Cty.*, 846 F.2d 469, 472 (8th Cir. 1987) (*en banc*) (*per curiam*) (Arnold, J., concurring) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). A substantive due process claim is subject to a high burden. *See Azam v. City of Columbia Heights*, 865 F.3d 980, 986 (8th Cir. 2017). "To prevail on a substantive due process claim, plaintiff must first establish 'a protected property interest to which the Fourteenth Amendment's due process protection applies.'" *Bituminous Materials, Inc.,* 126 F.3d at 1070 (noting that the Eighth Circuit takes "a restrictive view of when land use planning decisions by local government agencies violate an aggrieved party's substantive due process rights."). A plaintiff must then "demonstrate that the government action complained of is 'truly irrational, that is something more than . . . arbitrary, capricious, or in violation of state law.' *Koscielski v. City of Minneapolis*, 435 F.3d 898, 902 (8th Cir. 2006)). Under the truly irrational standard "[t]he action must . . . be so egregious or extraordinary as to shock the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998). "[E]ven allegations of bad faith enforcement of an invalid zoning ordinance do not, without more, state a substantive due process claim." *Bituminous Materials, Inc.*, 126 F.3d at 1070. Truly irrational government action "bear[s] no relationship whatever to the merits of the pending matter." *Lemke,* 846 F.2d at 472. Examples include making zoning decisions by coin toss or applying an ordinance

9

exclusively to those whose names begin with a letter in the first half of the alphabet. *Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1104 (8th Cir. 1992).

D. Equal Protection Clause

"The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits a state from denying 'to any person within its jurisdiction the equal protection of the laws.'" *Walker v. Hartford Life & Accident Ins. Co.*, 831 F.3d 968, 976 (8th Cir. 2016). Equal protection does not guarantee that all persons must be dealt with in an identical manner and does not forbid all classifications. *Id.* The clause generally requires the government to treat similarly situated people alike." *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994). "Dissimilar treatment of dissimilarly situated persons does not violate equal protection." *Id.* "Thus, the first step in an equal protection case is determining whether the plaintiff has demonstrated that [he] was treated differently than others who were similarly situated to [him]." *Id.* "Absent a threshold showing that [he] is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim." *Id.*; see *Koscielski*, 435 F.3d at 901 (stating that the plaintiff must generally allege and prove similarity to other individuals or entities receiving favorable treatment).

In addition to alleging different treatment, a plaintiff must also allege the different treatment was not rationally related to a legitimate government objective. *Id.* "A class-of-one claim is stated when a plaintiff alleges that a defendant intentionally treated him differently from others who are similarly situated and that no rational basis existed for the difference in treatment." *Mathers v. Wright*, 636 F.3d 396, 399 (8th Cir. 2011).

E.    Civil Rights Conspiracy

The Ku Klux Klan Act, 42 U.S.C. § 1985, "creates a private civil remedy for three prohibited forms of conspiracy to interfere with civil rights under that section." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 149 (5th Cir. 2010). Subsection 2 of the statute concerns "conspiracies to interfere with the administration of justice in state courts." *Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422, 1429 (8th Cir. 1986). In order to allege a constitutional conspiracy under that provision, a plaintiff must allege an agreement between the conspirators that was motivated by a discriminatory animus and must allege some facts to suggest the conspirators reached an understanding to violate his rights. *Jensen v. Henderson*, 315 F.3d 854, 862 (8th Cir. 2002). The elements of a claim under 42 U.S.C. § 1985(2) are: 1) the defendants conspired; 2) for purposes of impeding, hindering, obstructing, or defeating in any manner the due course of justice; 3) with intent to deny a citizen of the equal protection of the law or injure him for lawfully enforcing, or attempting to enforce, the right of any person to the equal protection of the law. 42 U.S.C. § 1985(2). To allege a conspiracy generally, a plaintiff must allege "an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Gometz v. Culwell*, 850 F.2d 461, 464 (8th Cir. 1988). A plaintiff must allege the conspiracy with "sufficient particularity," demonstrating with "specific material facts" that the parties reached some agreement and conspired together to injure the plaintiff. *Id.*; see also Fed. R. Civ. P. 9.

A corporation and its agents constitute a single entity in the eyes of the law, and a corporation cannot conspire with itself. *Meyers v. Starke*, 420 F.3d 738, 742 (8th Cir. 2005). This "intra-corporate conspiracy doctrine" extends to governmental entities. *Id.*

11

An exception to the intra-corporate conspiracy doctrine exists when a complaint names individual defendants and alleges those defendants acted outside of the scope of their employment. See *Cross v. Gen. Motors Corp.*, 721 F.2d 1152, 1157 (8th Cir. 1983).

F. Municipal Liability

A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). When the injury is inflicted as part of the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy[,]" the government as an entity is responsible under § 1983. *Id.* Under § 1983, the "official policy requirement" applies to "acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986). Also, a decision to adopt a particular course of action made by the municipality's authorized decision makers is an act of official government policy and the municipality is equally responsible. *Id.* at 481.

H. State Law Claims

In analyzing "the state constitutional issue of whether there has been a regulatory taking or damage for a public use" courts treat federal constitutional case law and [the] state constitutional case law as coterminous." *Strom v. City of Oakland*, 583 N.W.2d 311, 316 (Neb. 1998). Equitable estoppel against the government is warranted where there is a false representation by the government; government intent to induce the claimant to act on the misrepresentation; a lack of knowledge or inability to obtain true facts on the part of the claimant; and the claimant's reliance on the misrepresentation to his detriment. *Bartlett v. U.S. Dept. of Agric.*, 716 F.3d 464, 476-477 (8th Cir. 2013). Under Nebraska

law, to determine whether a contract has been unconstitutionally interfered with, courts examine: (1) whether there has been an impairment of the contract; (2) whether the government's actions, in fact, operated as a substantial impairment of the contractual relationship; and, if so, (3) whether that impairment was nonetheless a permissible, legitimate exercise of the government's sovereign powers. The Lamar Co., LLC v. City of Fremont, 771 N.W.2d 894, 905 (Neb. 2009).

III. DISCUSSION

The Court first finds that the defendants' motion to dismiss MSP's federal takings claims for lack of jurisdiction (Filing No. 27) should be denied. Exhaustion of state-law remedies is no longer a jurisdictional prerequisite to a takings claim. See Knick, 139 S. Ct. at 2172. Under Knick, a plaintiff has a right to assert his constitutional claim at the time of the alleged taking. Section 1983 plaintiffs are no longer required to satisfy this state court exhaustion before bringing their takings claims in federal court. Id.

Further, the Court finds MSP has adequately stated a claim for a regulatory taking under state and federal law. It alleges it has a property interest in continued use of the property created by state law and by the development agreement. Further, it alleges that there is no legitimate rational reason for the City's actions. It also alleges the value of the property has been diminished by the City's actions and it will incur demolition costs. It alleges that the City's conduct has substantially interfered with its justified expectations in the use of the land. These allegations are sufficient to state a claim for a regulatory taking. Consideration of a regulatory taking entails an "ad hoc, factual inquiry" that includes consideration of the economic impact, investment-backed expectations, and the

13

nature of the government regulation at issue that is more appropriately addressed on a motion for summary judgment.

The Court next finds the plaintiff's allegations are sufficient to state a claim under the procedural component of the Due Process Clause, but not under the substantive component of the clause. MSP alleges that it has a protectible interest in the use of the property and alleges it was derived of due process in that MSP was told it had waived rights to challenge the City's actions ,was denied its right to appear at hearings, and was denied rights to appeal. Taking the plaintiff's allegations as true and affording them the benefit of all reasonable inferences, the Court finds these allegations sufficiently state a claim for a violation of the procedural component of the Due Process Clause. At this stage of the proceeding, the Court cannot determine the extent of the plaintiff's property interest or whether the process afforded to MSP satisfies due process notice and hearing requirements. Although the defendants challenge MSP's factual contentions, stating that plaintiff Shannon actually did attend a hearing or meeting, that contention is more appropriately resolved on a motion for summary judgment. With respect to the substantive component of the Due Process Clause, assuming MSP has a cognizable property interest, it has not alleged facts that amount to government conduct that is arbitrary or capricious or shocks the conscience. Accordingly, the Court finds the plaintiff has not alleged a cognizable claim for violation of its substantive due process rights.

With respect to its equal protection claim, MSP asserts, as a class of one, that it was treated differently than other landowners in retaliation for speaking out and that the City had no rational basis for its actions that it took. The allegations that it was targeted and singled out for adverse treatment is a plausible allegation that there was not a rational

basis for the City's conduct. Retaliation for protected speech would not be a rational basis for taking an adverse action against a citizen. The allegation that it was the only landowner denied rights to appear at hearing or to appeal indicates that other property owners were treated differently. At this stage of the litigation, the Court must assume those facts are true. The nature and extent of the similarity between the plaintiffs and others is a matter that can be explored in discovery. At this point, the plaintiff's second amended complaint contains "enough factual matter (taken as true) to suggest" that "discovery will reveal evidence" of the elements of an equal protection claim. *See Twombly*, 550 U.S. at 556-58. Viewing the allegations in the light favorable to the plaintiff, the Court finds the plaintiff has adequately alleged an equal protection violation. Also, the plaintiff has alleged facts that establish municipal liability for the allegedly unconstitutional acts because it alleges that policy-makers made the allegedly wrongful decisions that form the basis of its complaint.

With regard to the Section 1985(2) conspiracy claim, the plaintiff alleges conduct taken by the individual defendants within the course and scope of their employment with the City of Bellevue. The plaintiff's second amended complaint shows on its face that the City and the individual city-employee defendants constitute a governmental entity subject to the intra-corporate conspiracy doctrine. MSP does not allege that the individual defendants acted outside of the scope of their employment. Accordingly, MSP's Section 1985(2) conspiracy claim is subject to dismissal under the intra-corporate conspiracy doctrine. If it were not precluded under that doctrine, the Court would find that the MSP fails to allege the elements of conspiracy with enough specificity to pass muster under Federal Rule of Civil Procedure 9 and does not allege facts that show the defendants

entered into a wrongful agreement to deprive rights. Accordingly, the plaintiff's Section 1985(3) claim will be dismissed.

For the reasons set out in connection with the federal Takings Clause claim, the Court finds the plaintiffs have sufficiently alleged an unlawful taking under Nebraska law. The plaintiffs have also plead facts to support a plausible claim for equitable estoppel. MSP properties allege that the City represented that MSP could continue to operate its U-Haul business, relied on that assurance, and was damaged when the city rezoned the property and conducted demolition. Determining the merits of the equitable estoppel claim requires an evaluation of the facts. The defendants' assertion that the plaintiffs' impairment of contract claim is barred by a covenant not to sue in the Agreement at issue also requires factual development that can be addressed on summary judgment. Accordingly,

IT IS HEREBY ORDERED that:

1. The Bellevue defendants' motion to dismiss (Filing No. 27) is granted in part and denied in part as set forth in this order.

2. The plaintiffs' 42 U.S.C. § 1983 substantive due process claim and the plaintiffs' 42 U.S.C. § 1985(2) conspiracy claim are dismissed.

3. The Bellevue defendants shall answer or otherwise respond to the plaintiffs' second amended complaint within fourteen (14) days of the date of this order.

Dated this 25th day of February, 2021.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge